# 19-2983(L)

## 19-3374 (con)

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

UNITED STATES OF AMERICA,
*Appellee*,

v.

THOMAS WHITTLE, DAVID BRITT, CYNTHIA HOLDER,
*Defendants*,

DAVID MIDDENDORF, JEFFREY WADA,
*Defendants-Appellants*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

# SUPPLEMENTAL OPENING BRIEF OF APPELLANT JEFFREY WADA

Stephen R. Cook
BROWN RUDNICK LLP
2211 Michelson Drive
Irvine, CA 92612

Justin S. Weddle
WEDDLE LAW PLLC
250 West 55th Street, 30th Floor
New York, NY 10019

Roman Martinez
Michael Clemente
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

Jason M. Ohta
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130

*Counsel for Appellant Jeffrey Wada*

May 1, 2023

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

PROCEDURAL HISTORY ........ 3

ARGUMENT ........ 10

I. THE GOVERNMENT'S NEW INTERPRETATION OF *KELLY* REQUIRES REVERSAL OF WADA'S CONVICTIONS ........ 10

II. *BLASZCZAK II* REQUIRES REVERSAL OF WADA'S CONVICTIONS ........ 13

CONCLUSION ........ 18

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Carpenter v. United States*,
484 U.S. 19 (1987) .......... 4, 12, 14

*Cleveland v. United States*,
531 U.S. 12 (2000) .......... 4, 8

*Free Enterprise Fund v. Public Co. Accounting Oversight Board*,
561 U.S. 477 (2010) .......... 14

*Kelly v. United States*,
140 S. Ct. 1565 (2020) .......... *passim*

*Olan v. United States*,
141 S. Ct. 1040 (2021) .......... 5

*United States v. Blaszczak*,
56 F.4th 230 (2d Cir. 2022) .......... *passim*

*United States v. Blaszczak*,
947 F.3d 19 (2d Cir. 2019), *cert. granted, judgment vacated*,
141 S. Ct. 1040 (2021) .......... 1, 4, 11

*United States v. Blaszczak*,
141 S. Ct. 1040 (2021) .......... 5

*United States v. Gatto*,
986 F.3d 104 (2d Cir. 2021) .......... 6

*United States v. Girard*,
601 F.2d 69 (2d Cir. 1979) .......... 4, 16, 17

## STATUTES

15 U.S.C. § 7201 *et seq* .......... 14

15 U.S.C. § 7202(b)(1) .......... 15

15 U.S.C. § 7214(a)(1) .......... 15

**Page(s)**

15 U.S.C. § 7215(c)(4) .......... 15

15 U.S.C. § 7217(a) .......... 15

18 U.S.C. § 641 .......... 4, 16

18 U.S.C. § 1343 .......... 17

## INTRODUCTION

Appellant-Defendant Jeffrey Wada's appeal has now been held in abeyance for over two years. That extended delay came at the request of the Government, after its key precedent underlying Wada's conviction—*United States v. Blaszczak* ("*Blaszczak I*")—was vacated and remanded by the Supreme Court for reconsideration in light of *Kelly v. United States*, 140 S. Ct. 1565 (2020). *See* 947 F.3d 19 (2d Cir. 2019), *cert. granted, judgment vacated*, 141 S. Ct. 1040 (2021). The Government asked this Court to hold Wada's appeal in abeyance pending the new *Blaszczak* ruling (Gov't Mot., ECF 151; *see* Order, ECF 162)—and then it confessed error in that case. On December 27, 2022, the Court handed down its new *Blaszczak* ruling, holding that *Blaszczak I* was unsound for many of the same reasons argued by Wada in his appellate briefs. *See* 56 F.4th 230, 233 (2d Cir. 2022) ("*Blaszczak II*"). These significant developments—the Government's change in position leading up to *Blaszczak II* and the new decision itself—both confirm that Wada's convictions under the federal fraud statutes cannot stand.

First, despite the Government's initial insistence in its briefing that *Blaszczak I* was fully consistent with *Kelly*, it subsequently changed its position and agreed that *Kelly* required reversing the *Blaszczak* defendants' convictions under the federal fraud statutes. That change in position began at the Supreme Court, where the Solicitor General conceded that *Blaszczak I* should be vacated and remanded for

reconsideration in light of *Kelly*. Then, on remand, the Government explained (at the direction of the Solicitor General) that "it is now the position of the Department of Justice" that confidential government information generally does *not* constitute property, and it asked the Court to reverse the *Blaszczak* defendants' convictions. *Blaszczak* Post-Remand Gov't Br. 7-8, ECF 453 ("*Blaszczak* Br."); *see Blaszczak* Gov't Resp. Ltr., Dkt. 497 ("*Blaszczak* Ltr."). Based on this interpretation, the Solicitor General has directed the abandonment of at least one other, similarly flawed prosecution. *See infra* at 8-9, 13.

Second, this Court's decision in *Blaszczak II* endorsed the Government's corrected position on *Kelly* and confidential government information. *See* 56 F.4th at 242-45. *Blaszczak II* explained that, under *Kelly*, the *Blaszczak* defendants could be convicted of violating the federal fraud statutes only if the "objective of their schemes" was to obtain government "property." *Id.* at 243. But in *Blaszczak*, as in *Kelly*, the object of the defendants' fraud was to alter or obtain advance notice of "a regulatory choice," not to obtain "property." *Id.* (citation omitted). That is because confidential *government* information, unlike confidential *business* information, is generally *not* the government's "stock in trade" that it generates and sells; rather, the value of such information is in carrying out the government's regulatory functions. For those reasons, *Blaszczak II* agreed with the Government that the defendants' convictions could not stand.

The Government's corrected position and *Blaszczak II* both require a similar result in Wada's case. Like the *Blaszczak* defendants, Wada's convictions were based on the unsound premise that confidential government information generally *does* constitute "property" under the federal fraud statutes. But the confidential government information at issue here—selection information about upcoming inspections by the Public Company Accounting Oversight Board (PCAOB)—is not the PCAOB's "stock in trade" that it creates and sells. Rather, the PCAOB generates that information by making regulatory choices about who to inspect as it carries out its governmental function. A scheme to interfere with such a regulatory choice is not a scheme to obtain "property," as made clear by *Kelly*, the Government's post-*Kelly* position in *Blaszczak* and other cases, and this Court's decision in *Blaszczak II*.

For this and the other reasons stated in Wada's prior briefing, Wada's convictions should be reversed.

## PROCEDURAL HISTORY

Wada's conviction and appeal has been closely intertwined with the *Blaszczak* case, which raises similar issues about confidential government information.

1. In *Blaszczak I*, this Court issued a divided opinion holding that certain confidential government information from the Centers for Medicare & Medicaid Services (CMS)—predecisional information about CMS's forthcoming rates—

constituted "property" under the federal fraud statutes. The majority held that "in general, confidential government information may constitute government 'property' for purposes of" the federal fraud statutes, and that the CMS information at issue in that case constituted property in the hands of the Government. 947 F.3d at 34. That decision relied extensively on *Carpenter v. United States*, 484 U.S. 19 (1987)—which deemed confidential *business* information to be "property"—and it distinguished *Cleveland v. United States*, 531 U.S. 12 (2000)—which held that schemes to alter government regulatory choices are *not* schemes to obtain "property."[1]

After *Blaszczak I*, Wada argued that the confidential government information in his case—selection information about the PCAOB's upcoming inspections—does not constitute "property" under the fraud statutes. Wada Opening Br. 33-49, ECF 76; Wada Reply Br. 14-23, ECF 125. Wada contended that *Blaszczak I* was wrongly decided; that it was irreconcilable with *Kelly*; and that, in any event, it did not render the PCAOB information in his case "property," because that information shared even less resemblance to traditional property than the confidential CMS information at issue in *Blaszczak I*. *Id.* The Government argued that *Kelly* did not create new law

---

[1] *Blaszczak I* also relied on *United States v. Girard*, 601 F.2d 69 (2d Cir. 1979), to hold that "confidential information can itself be a 'thing of value'" under a separate statute, 18 U.S.C. § 641. 947 F.3d at 39 (citation omitted).

but merely applied *Cleveland*. Gov't Br. 20-26, ECF 118. It argued that both cases were "inapposite" and that *Blaszczak I* remained good law after *Kelly*. *Id.* at 25; *see* Gov't Mot. 3-4, ECF 151.

2. After the close of briefing in Wada's appeal, while the *Blaszczak* defendants' petitions for certiorari were pending, the Government changed its position on *Kelly* and confidential government information: The Solicitor General informed the Supreme Court that *Blaszczak I* should be vacated and remanded for reconsideration in light of *Kelly*. *See* U.S. Mem., *Olan v. United States*, No. 20-306 (U.S. Nov. 24, 2020); U.S. Mem., *Blaszczak v. United States*, No. 20-5649 (U.S. Nov. 24, 2020). On January 11, 2021, the Supreme Court granted those petitions, vacated *Blaszczak I*, and remanded for further consideration in light of *Kelly*. *See* *Olan v. United States*, 141 S. Ct. 1040 (2021); *Blaszczak v. United States*, 141 S. Ct. 1040 (2021).

On January 27, 2021, the Government moved to hold Wada's appeal in abeyance pending disposition of the Court's decision on remand in *Blaszczak*. *See* Gov't Mot. 4. The Government explained that this delay was warranted because both cases rested on construction of the same term ("property") in the federal fraud statutes. *Id.* at 5 ("Like *Blaszczak*, this appeal concerns the construction of 'property' under the wire fraud statute in light of *Carpenter*, *Cleveland*,

*Pasquantino*, and *Kelly*.”). This Court agreed and held Wada’s appeal in abeyance. Order, ECF 162.

After agreeing to vacatur and remand of *Blaszczak I*, the Government submitted a brief and a lengthy letter in that case, setting forth its considered position on *Kelly* and confidential government information: Schemes to obtain confidential government information about upcoming regulatory actions cannot be considered a scheme that targets “property” under the fraud statutes. *See Blaszczak* Br.; *Blaszczak* Ltr.

In its brief, the Government explained that “it is now the position of the Department of Justice that in a case involving confidential government information, that information typically must have economic value in the hands of the relevant government entity to constitute ‘property’ for purposes of 18 U.S.C. §§ 1343 and 1348.” *Blaszczak* Br. 7. And even though a government agency “‘does have an economic interest in its confidential predecisional information’ because the agency ‘invests time and resources into generating and maintaining the confidentiality’ of that information, and leaks affect the ‘efficient use of its limited time and resources,’” *id.* at 8 (emphasis and citation omitted), such an economic interest is insufficient “in the Department’s view, shaped by *Kelly*,” when it does “not constitute ‘an object of the fraud,’” *id.* (quoting *Kelly*, 140 S. Ct. at 1573); *see also United States v. Gatto*, 986 F.3d 104, 114-16 & n.4 (2d Cir. 2021) (emphasizing this

aspect of *Kelly*). In *Blaszczak*, the Government acknowledged that the "CMS employee time" spent generating the confidential information "did not constitute 'an object of the fraud,' and thus the associated 'labor costs could not sustain the conviction[s].'" *Blaszczak* Br. 8 (alteration in original) (quoting *Kelly*, 140 S. Ct. at 1573).

The Government further explained its position when responding to the letter brief filed by a court-appointed amicus, which the Court had tasked with arguing that *Kelly* "does not invalidate the original panel's holding [in *Blaszczak I*] that the confidential government information at issue here constituted 'property.'" Order, ECF 470; *see Blaszczak* Ltr. In its response, the Government again reaffirmed that "[f]ollowing *Kelly*, the defendants' scheme in [*Blaszczak*]—to obtain confidential agency information about upcoming regulatory decisions—can no longer be considered a scheme that targets 'property.'" *Blaszczak* Ltr. 1. That was so, the Government explained, because "[t]he object of defendants' scheme—confidential predecisional information about agency reimbursement rates—was wholly subsumed within the purely regulatory function of administrative rate-setting." *Id.* at 5. The value of the confidential CMS information "was based entirely on its relationship to an upcoming exercise of regulatory authority;" that information did not have any value in the hands of the victim (CMS) other than "as part of the regulatory process." *Id.*

If anything, the Government explained, "the legal defects in the property-fraud convictions [in *Blaszczak I*] follow *a fortiori* from *Kelly*." *Id.* While *Kelly* implicated a form of "property under traditional legal authorities" (bridge lanes), the purported "property" at issue in *Blaszczak I* (CMS's confidential government information), "does not bear any direct connection to 'traditional concepts of property.'" *Id.* at 5-6 (quoting *Cleveland*, 531 U.S. at 24). "And the premise that confidential regulatory information constitutes property is tenuous after *Kelly*, which reiterated *Cleveland*'s sharp 'distinction between property and regulatory power.'" *Id.* at 6 (quoting *Kelly*, 140 S. Ct. at 1572).

3. While this Court's decision on remand in *Blaszczak* was pending, the Government confessed error in another case, *United States v. Aytes*, No. 19-3981 (2d Cir.), Mot. Dismiss, ECF 65 ("*Aytes* Mot. Dismiss"). There, the defendant was a former employee of the Federal Deposit Insurance Corporation (FDIC), and a jury found her guilty of violating 18 U.S.C. § 641, which prohibits taking a "thing of value" of the United States without authorization. *Id.* at 1-3. The "thing of value" at issue was documents containing confidential government information about how the FDIC would liquidate certain banks in the event of a severe financial crisis. *Id.* The district court granted the defendant's motion for judgment of acquittal, and the government appealed. *Id.* at 2. But on April 12, 2021, at the instruction of the Solicitor General, the Government confessed error with respect to its Section 641

charges against Aytes and moved to dismiss its appeal. *Id.* at 5. The Government explained that, in light of *Kelly*—and in light of its corrected position in *Blaszczak*—its prosecution of Aytes should terminate, because the confidential governmental information in that case was "not sufficiently distinguishable from the confidential information at issue in *Blaszczak*," which also involved charges under Section 641. *Id.* This Court summarily granted the Government's motion and dismissed the appeal. *Aytes* Order, ECF 70.

4. On December 27, 2022, this Court handed down its decision in *Blaszczak II*. The Court agreed with the Government that, in light of *Kelly*, the *Blaszczak* defendants' convictions under the federal fraud statutes were unsound, because the object of their fraud was not to obtain "property." *See* 56 F.4th at 242-45. Judge Kearse, who had dissented in *Blaszczak I*, now wrote the majority opinion and explained that, under *Kelly*, the *Blaszczak* defendants could be convicted of violating the federal fraud statutes only if the "objective of their schemes and conduct was money or property" of the Government. *Id.* at 243. But in *Blaszczak*, as in *Kelly*, the object of the defendants' fraud was to "alter . . . a regulatory choice" of the Government, not to obtain its "property." *Id.* (citations omitted). That is because confidential *government* information, unlike confidential *business* information, is generally *not* "stock in trade, to be gathered at the cost of enterprise, organization, skill, labor, and money, and to *be distributed and sold to those who [would] pay*

*money for it*." *Id.* (alteration in original) (citations omitted). For those reasons, this Court agreed with the Government that the defendants' convictions could not stand.

## ARGUMENT

### I. THE GOVERNMENT'S NEW INTERPRETATION OF *KELLY* REQUIRES REVERSAL OF WADA'S CONVICTIONS

Since the close of briefing in this case, the Government has abandoned its prior position on *Kelly* and confidential government information and has adopted Wada's view that such information is *not* a traditional form of property and generally cannot support a conviction under the federal fraud statutes. Like the defendants in *Blaszczak* and *Aytes*, Wada's convictions should also be set aside.

The confidential government information in Wada's case was selection information about the PCAOB's upcoming inspections of KPMG audits. *See* Wada Opening Br. 5-10; Wada Reply Br. 14-16. Under the Government's new post-*Kelly* interpretation of the federal fraud statutes, such information does not constitute "property" because it does not have "economic value in the hands of the" PCAOB. *Blaszczak* Br. 7-8. "Unlike confidential news material or stock-trading statistics [in *Carpenter*], which have inherent market value to their owners," the PCAOB inspection selections—like the draft CMS reimbursement rates in *Blaszczak*—"have value to the government only as a regulator, not 'as a property holder.'" *Blaszczak* Ltr. 7 (alteration in original) (emphasis and citation omitted). "Just as lane allocation [in *Kelly*] regulates traffic," and the "release of reimbursement rates [in *Blaszczak*]

regulates the provision of medical services," *id.* at 5, so too the PCAOB's inspection of accounting firms regulates the provision of accounting services.

In addition, like the information in *Blaszczak*—predecisional regulatory information that CMS would later disclose—the PCAOB's selection of inspections is likewise disclosed (without cost) in advance of the actual inspections. *See* Wada Opening Br. 6 ("After the PCAOB selects the specific audits it plans to inspect, it notifies the firms several weeks in advance of the inspection to give them time to prepare." (citing A237-38)). The allegation in both *Blaszczak* and here was that the information was improperly disclosed earlier than the agency planned.

Nor can Wada's convictions be sustained on the theory that the inspection selection information is somehow transformed into "property" by the PCAOB's labor costs in preparing that information. As the Government explained on remand in *Blaszczak*, "after *Kelly*" convictions cannot be sustained on the theory that the agency "'invests time and resources into generating and maintaining the confidentiality of its nonpublic predecisional information' at issue and that defendants' fraud 'implicates [the agency's] economic interest in making efficient use of its limited time and resources.'" *Blaszczak* Ltr. 6 (quoting *Blaszczak I*, 947 F.3d 19, 33 (2d Cir. 2019)). Even though "agency time and resources remain property after *Kelly*," any deprivation of them in Wada's case—as in *Blaszczak* and *Kelly*—"would be 'an incidental (even if foreseen) byproduct of [defendants']

regulatory object.'" *Id.* (alteration in original) (quoting *Kelly*, 140 S. Ct. at 1574). And here, it is undisputed that the time and resources that the PCAOB spent generating its inspection lists were *not* the object of the alleged fraud. *See* Gov't Br. 26 ("The object of the scheme here was . . . to misappropriate confidential PCAOB inspection lists so that KPMG could use the information to its advantage in the PCAOB inspection process.").

In addition, like the confidential government information in *Blaszczak*, "the property-fraud convictions here follow *a fortiori* from *Kelly*," because "confidential regulatory information does not bear any direct connection to 'traditional concepts of property.'" *Blaszczak* Ltr. 5-6 (citation omitted). "And the premise that confidential regulatory information constitutes property is tenuous after *Kelly*, which reiterated the sharp 'distinction between property and regulatory power'" from *Cleveland*. *Blaszczak* Ltr. 6 (citation omitted); *see* Wada Br. 33-46 (explaining that PCAOB inspection selections are not traditional forms of property).

The Government's new position also properly distinguishes between confidential *government* information and the confidential *business* information at issue in *Carpenter*, 484 U.S. 19. *See Blaszczak* Ltr. 7. As the Government explains, "[a]lthough '[c]onfidential business information has long been recognized as property,' *Kelly* and *Cleveland* make clear that information cannot be deemed 'business' information when the 'business' is a regulatory function (here,

ratemaking) that is governmental in nature and has no private analogue." *Id.* (alteration in original) (citation omitted). That is the case here. "Unlike confidential news material or stock-trading statistics, which have inherent market value to their owners," the PCAOB inspection selections here "have value to the government only as a regulator, not 'as [a] property holder.'" *Id.* (alteration in original) (emphasis and citation omitted).

This analysis is also consistent with the Government's position in *Aytes*, where it similarly confessed error in light of *Kelly* and abandoned its prosecution because the object of the fraud was "confidential government information." *See Aytes* Mot. Dismiss. There, the Government recognized that the FDIC's confidential information about how it would liquidate certain banks in the event of financial crisis was "not sufficiently distinguishable from the confidential information at issue in *Blaszczak*." *Id.* at 5. The same is true here. The Government's considered position on *Kelly* and confidential government information should be applied consistently. Doing so requires reversing Wada's convictions.

## II. *BLASZCZAK II* REQUIRES REVERSAL OF WADA'S CONVICTIONS

The analysis above is fully consistent with—and mandated by—this Court's decision in *Blaszczak II*. There, after addressing the Government's authority to seek a remand, *see* 56 F.4th 230, 237-42 (2d Cir. 2022), the Court turned to the merits and concluded that the defendants' scheme to obtain confidential government

information was not a scheme to obtain "property," *id.* at 242-46. Again, the same holds true for Wada.

Echoing the Government's position on remand, *Blaszczak II* held that "[w]hile confidential information may constitute property of a commercial entity such as the publisher victim in *Carpenter v. United States*, 484 U.S. 19 (1987)—for which confidential information was its 'stock in trade, to be gathered at the cost of enterprise . . . and *to be distributed and sold to those who [would] pay money for it*'—the same is not true with respect to a regulatory agency such as CMS." *Id.* at 243 (second alteration in original) (emphasis added by Court) (quoting *Carpenter*, 484 U.S. at 26). The Court explained that such an agency "is not a commercial entity; it does not sell, or offer for sale, a service or a product." *Id.* Confidential information belonging to such agencies thus does not qualify as "property" under the fraud statutes.

The PCAOB has the same relevant characteristics as CMS. It is a regulatory entity that Congress created to oversee the accounting firms that audit public companies. *See* Sarbanes-Oxley Act of 2002, 15 U.S.C. § 7201 *et seq.*; *see also Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 485-86 (2010) ("[T]he [PCAOB] is a Government-created, Government-appointed entity, with expansive powers to govern an entire industry."). The PCAOB creates substantive auditing procedures that accounting firms must follow when conducting

audits. A217-18. Those audit procedures have the same force as rules issued by the SEC, 15 U.S.C. § 7202(b)(1), which oversees the PCAOB, *id.* § 7217(a). The PCAOB is further authorized to investigate and discipline registered public accounting firms, and may "impose such disciplinary or remedial sanctions as it determines appropriate." *Id.* § 7215(c)(4). The PCAOB also conducts a "continuing program of inspections" of registered public accounting firms to ensure their compliance with the rules of the PCAOB, the SEC, and professional standards. *Id.* § 7214(a)(1). Like CMS, the PCAOB does not distribute and sell its confidential information about upcoming regulatory actions. *See Blaszczak II*, 56 F.4th at 243. It is "not a commercial entity" and does not "sell, or offer for sale, a service or a product." *Id.* The PCAOB's confidential information—like CMS's confidential information—is therefore not "property" under the fraud statutes.

Nor can this confidential information transform into "property" simply because the PCAOB expended "employee labor" to generate it. *Id.* at 235 (citing *Kelly*, 140 S. Ct. at 1573-74). "'[E]very regulatory decision' involves some employee labor," but such costs cannot satisfy the federal fraud statutes when, as here, they are "'only an incidental byproduct of the scheme.'" *Id.* (quoting *Kelly*, 140 S. Ct. at 1573-74). In fact, *Blaszczak II* makes clear that the allegations in Wada's case are *even further* from satisfying the property element than the allegations in *Kelly*. Unlike the scheme in *Kelly*, which "sought to alter the agency's

exercise of its regulatory power," the goal of the alleged conduct in *Blaszczak* (as in Wada's case) "was a step removed from any attempt at alteration; defendants instead schemed to obtain and promptly utilize advance information as to how the regulatory power would be exercised." 56 F.4th at 244. As in *Blaszczak*, the allegations against Wada are "a step removed from any attempt at alteration," because the alleged scheme was only to obtain earlier advance notice of a regulatory choice—information about the PCAOB's selection of upcoming KPMG inspections—not to "alter" that regulatory choice by changing the selection of inspections. This reinforces that Wada's misconduct did not deprive the PCAOB of its "property" in the relevant sense.[2]

---

[2] *Blaszczak II* separately addressed 18 U.S.C. § 641, because the defendants there had also been convicted under that statute. Section 641 is broader than the federal fraud statutes in certain respects. It is directed at crimes against the United States and prohibits schemes to obtain not only government "property," but also any "thing of value" belonging to the Government. In response to the dissent, the majority in *Blaszczak II* addressed how its ruling on Section 641 is consistent with this Court's older precedent in *United States v. Girard*, 601 F.2d 69, 70-71 (2d Cir. 1979), which found certain confidential information to qualify as a "thing of value" under Section 641. *See* 56 F.4th at 244 (explaining that *Girard* found certain confidential information to be "a 'thing of value' to the DEA within the meaning of § 641"). That discussion is not relevant to Wada's appeal, because he was not charged under Section 641. In any event, to the extent that *Girard* has any bearing on the meaning of the federal fraud statutes, it was decided long before the Supreme Court's modern jurisprudence on the "property" element. *Girard* thus did not conduct the requisite traditional property inquiry required by the fraud statutes. If *Girard*'s analysis of Section 641 were reflexively carried over to the federal fraud statutes, it plainly would not pass muster, because it extends far beyond the limits of the "property" element. *Girard* stated that "thing of value" were "words of art," and

*     *     *

*Kelly* was the latest in a series of Supreme Court decisions rigorously enforcing critical limits on the scope of federal criminal law. *See* Wada Opening Br. 1, 33-36; Wada Reply Br. 16-18. In its wake, both the Government and this Court have properly recalibrated their understanding of the property element of 18 U.S.C. § 1343. Their new and narrower approach avoids the dangers posed by overcriminalization and eliminates the fundamental legal defects underlying this prosecution. It confirms that the alleged misconduct in this case—even if inappropriate or unethical—does not constitute a violation of the federal fraud statutes.

---

covered a wide-range of intangible but valuable things, such as "amusement," "sexual intercourse," and the "testimony of a witness." 601 F.2d at 71. None of those things qualifies as a traditional form of "property" under *Cleveland*, *Kelly*, or the Government's post-*Kelly* interpretation of the fraud statutes.

## CONCLUSION

For this and all of the reasons stated above and in Wada's other briefs, Wada's convictions should be reversed.

Dated: May 1, 2023

Respectfully submitted,

*/s/ Roman Martinez*

Roman Martinez
Michael Clemente
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

Jason M. Ohta
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130

Stephen R. Cook
BROWN RUDNICK LLP
2211 Michelson Drive
Irvine, CA 92612

Justin S. Weddle
WEDDLE LAW PLLC
250 West 55th Street, 30th Floor
New York, NY 10019

*Counsel for Appellant Jeffrey Wada*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This brief complies with the type-volume limitation of the Court's Order of March 30, 2023 because this brief contains 3,987 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 with 14-point Times New Roman font.

Dated: May 1, 2023

*/s/ Roman Martinez*
Roman Martinez